REFORSO KNITTING MILLS, INCORPORATED, appellant,

*v.*

M. AND N. CONSTRUCTION COMPANY, respondent.

[Decided February 4th, 1929.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, who filed the following opinion:

"This cause was submitted on the pleadings, affidavits, exhibits and written stipulation.

"The defendant corporation is owned and controlled by Louis Mirner and Joseph Nosenchuk, who, as individuals, acquired title to defendant's land by deed from the Metzger Realty Company, dated December 8th, 1925, and thereafter conveyed to the defendant by deed dated November 30th, 1926, recorded December 8th, 1926. The complainant acquired title to its land early in February, 1927. The deed to defendant contains a covenant that it will not erect anything on its land but a brick apartment house of the same height, depth, width, character, style and color as the apartment house then upon complainant's land, but it contains no reference to a picture or drawing showing complainant's building and a contemplated building on defendant's land. Of course, defendant's rights in the erection of a building on its land are not to be judged from its deed alone, but also by any building restrictions contained in any previously recorded deeds affecting its title. It appears that the Metzger company owned both tracts and erected on the easterly tract now owned by complainant a brick apartment house and thereafter conveyed said easterly tract to Henry Richards by a deed which contained a covenant by the grantor to the effect that the Metzger company, its successors or assigns, would not erect upon the westerly tract retained by the grantor, anything but a brick apartment house of the same height, depth, width, character, style and color as the building on the land conveyed to Richards, so that the building when erected on the westerly tract, would in all respects be like and resemble the twin apartments as shown on a picture or drawing in Richard's possession and so that the new apartment house and the one already erected would constitute the twin apartments shown on the drawing. The covenant further states its intention to be that the lands now owned by defendant should be used for no other purpose than the erection of an apartment house of the height, depth, style and character as shown on said drawing, the color of the brick, stone and other material to be used on the exterior to be identical with that of its neighbor.

"Negotiations for the purchase by Mirner and Nosenchuk from the Metzger company were conducted by Nosenchuk. He was informed of the covenant contained in the deed from the Metzger company to Richards and he asked the president of the Metzger company where the drawing therein referred to could be found and he was told there was but one such drawing in existence and that it had been delivered to Richards. He then went to Richards and stated that he, Nosenchuk, was negotiating for the purchase of the westerly tract and desired to see the drawing before proceeding further. Richards told him that he (Richards) had had it and had made a thorough search for it and could not find it and believed it had been destroyed. On a subsequent occasion Richards made the same statement to Nosenchuk. With this information Mirner and Nosenchuk purchased the westerly tract and subsequently conveyed it to themselves under the style of a corporation. Had Richards continued to own the easterly tract he could not be heard to complain that the apartment house subsequently erected by defendant does not correspond to the drawing, if in all substantial particulars it meets the requirements of the covenant, the covenant being so far as Mirner and Nosenchuk knew, the only evidence in existence showing the building restrictions affecting their property and I am inclined to the opinion that the complainant, as a grantee under Richards, can have no further rights against the defendant than Richards had, unless it had exhibited said drawing to defendant or notified the defendant that complainant and not Richards, had the drawing before the defendant had progressed too far with its building, although defendant had acquired its title in good faith believing that the sole guide as to the kind of building it could construct, was to be found in the recorded covenant.

"About the time complainant acquired title to the easterly tract, the defendant commenced excavating its cellar on the westerly tract and of this work complainant's officers were aware. They saw defendant's building go up to the first story windows and they then believed that defendant was not constructing his building according to the drawing, which in some undisclosed way, had come into complainant's possession,

but it was not until the defendant had constructed the third floor of its apartment house that complainant exhibited its drawing to defendant and objected to defendant's manner of construction. The defendant had then expended $50,000 in its work and if it could then have met complainant's objection, it would have had to tear down two stories of its building, at an expense of $20,000. I am of the opinion that the complainant's failure to exhibit the drawing to defendant and to assert its claim earlier, is fatal to its prayer for relief.

"The defendant's building complies with the limitations placed upon it by the wording of the covenant in the deed to Richards in that it is a brick apartment house, of the same height above the street grade, depth, width, character, style and color of brick and with the same ornamental stone work and other exterior materials as complainant's building. Is it a twin building as defined in the covenant and is it in substantial compliance with the drawing? The word 'twin' is defined to mean 'two; twain; a pair, a couple, and I take 'twin buildings' to mean not two buildings so constructed that they appear to be a single building, but two buildings which look like separate buildings, but are similar in exterior construction and appearance. The picture or drawing is, of course, not a photograph or drawing of two buildings in existence at the time it was made; it is an attempt by an artist or architect to depict his mental conception of the appearance two buildings would present to the eye when both were completed, but like many of such concepts, it represents an ideal and not actual conditions. For instance, it shows shapely trees in front of the buildings where there are, in fact, untrimmed and sprawling ones; it pictures flowers and shrubbery surrounding the front of each building and it further shows the two buildings fronting on a street of a uniform level for the entire width of each building. The fact is that there is an abrupt drop in the street grade and that from the complainant's westerly line to the defendant's westerly line there is a downhill descent of eight feet; yet, according to the drawing, the height of the first story from the street grade to the first story copings in each building is the same, which manifestly cannot be if the top of each

building was intended to be on the same level, as the drawings indicate they are. I am of the opinion that the drawing should be interpreted in the light of the ground levels as they were when the drawing was made and as they still are and that the intention of the drawing was to show merely two buildings, twins, of the same height above the street grade, of the same width and of the same exterior appearance. The undisputed evidence is that defendant's building, when completed according to its plans and viewing it from up or down the street, its copings, window sills and other parts will appear to be on the same level as the identical parts of complainant's building, the result of an optical illusion due to the grade of the street.

"The complainant comes into court seeking relief on the ground, among others, that if defendant is permitted to complete its building, the complainant will suffer irreparable loss, but no evidence is presented in support of such allegation, while on the other hand it does appear that to enforce the covenant as complainant would have it enforced, would operate oppressively against the defendant and to its great injury.

"I do not think that the complainant is entitled to the injunction for which it prays and I shall advise a decree dismissing the bill."

*Mr. Elmer W. Demarest,* for the appellant.

*Messrs. Gross & Gross,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Fielder.

*For reversal*—None.